WILLIAM J. HADLEY *v.* THE MAYOR, ALDERMEN AND·COM-
MONALTY OF THE CITY OF ALBANY.

The common council of the city of Albany, having once legally canvassed the
votes returned for the election of mayor of said city, have exhausted their
power over that subject, and cannot afterwards reverse their decision by
making a different determination.

Where the law has committed to the common council the duty of canvassing
the returns, and determining the result of an election from them, and the
council have performed that duty and made their determination, the question
as to the effect of the returns made is not open for determination by a jury
in an action in which the title of the officer to his office comes up collaterally.

THIS action was originally commenced by James Conlon,
as plaintiff, to recover his salary or compensation as one of
the policemen of the city of Albany for a part of the year
1857. Pending the suit, and after the trial, Mr. Hadley suc-
ceeded to his rights by assignment, and was substituted as
plaintiff— Conlon having died. . The defense set up was, that
Conlon had been removed from his office prior to the time for
which the salary in arrear was claimed.

It was admitted by the pleadings that Conlon was duly
appointed, by the common council of the city, a policeman,
for the term of two years from May 20, 1856, and entered
upon the duties of the office.

The provisions of law respecting the suspension and remo-
val of policemen are the following: The chief and each of
the captains of police are authorized to suspend policemen
for cause; and any person may make complaint against them
to the mayor. In case of suspension, the party ordering it is
to notify the mayor, stating the grounds of the act, and giving
the names of the witnesses to prove the charges. The police-
man is to have notice, and an opportunity of being heard in
his defense. The mayor, or, in his absence, the chief of
police, together with the recorder and one alderman, are to
examine witnesses upon the complaint and for the defense,
and may continue the suspension of the policeman, remove
him from office, or restore him to duty. If the suspension is

continued, the policeman is to be deprived of his pay from the date of the suspension; but he is not exempt from duty in consequence of suspension, unless it is so expressly ordered. (Laws, 1851, p. 87, §§ 9–11.)

The order of removal on which the defendant relied was made by John V. P. Quackenbush, as mayor, together with the recorder and an alderman of the city. The question was made whether Mr. Quackenbush was legally the mayor — the plaintiff contending that Eli Perry, and not Quackenbush, was the mayor.

The course of the trial was this: Mr. Perry testified that he was a candidate for mayor at the charter election held the 8th April, 1856, and subsequently received from the clerk of the common council a certificate of election for the legal term of two years from May 1, 1856; that he qualified and acted as mayor during the time; that he had never received any charges against Conlon, nor acted on any trial against him. The certificate of election, under the seal of the city, and authenticated by D. M. Barnes, as clerk of the common council, was produced and given in evidence. It appeared by it that Eli Perry had a plurality of all the votes cast, and that J. V. P. Quackenbush had the next largest number of votes, and that the members of the common council, at their first meeting subsequent to the election, the 15th April, 1856, made that their certificate, thereby determining that Eli Perry was duly elected mayor for the legal term, pursuant to the statute, &c. The document purported to be signed by twelve members of the common council.

It was then proved that the salary of a policeman was $500 a year, and that there would be due to Conlon $662.19 at the time of the commencement of this action, including interest.

The defendants' counsel then offered in evidence the minutes of the board of common council of the city of Albany, containing the proceedings of said board at a meeting held on the 6th day of May, 1856, to show a canvass made on that day of the votes cast at the preceding charter election. The plaintiff's counsel objected to this, on the ground that the canvass had already been made, and the new board had no

power to canvass.   The objection was sustained, and the defendants' counsel excepted.   The defendants then offered in evidence the returns of the inspectors of election for the charter election held April 8, 1856; but this was objected to, on the ground that the certificate could not be controverted; and the objection was sustained, the defendants' counsel excepting.

The defendants' counsel then offered in evidence the returns of the trial of the plaintiff Conlon, before Mr. Quackenbush as Mayor, Recorder Paddock and an alderman of the city; his plea of guilty, and his discharge, and urged that the proceedings, if irregular, should have been corrected on *certiorari*.   The plaintiff objected to the evidence, which was excluded, and the defendants again excepted.   The judge (Mr. Justice GEORGE GOULD), before whom the case was tried without a jury, gave judgment for the plaintiff for the amount of pay and interest.   This judgment was affirmed at a General Term, upon which the defendants prosecuted this appeal.

The case does not contain any finding of conclusions of fact or law by the judge, other than the judgment rendered.

*Samuel Hand*, for the appellants.

*W. J. Hadley*, in person.

DENIO, Ch. J.   There being no conclusions of fact found by the judge, the only questions which are open for examination upon this appeal are those which arise upon the exceptions to rulings taken in the course of the trial.

The election for mayor and other officers in 1856 was held on the day appointed by law, the second Tuesday (8th day) of April, and the terms of the newly chosen officers commenced on the first Tuesday of May thereafter. (Laws, 1855, ch. 196, §§ 1, 2, 3.)   The law requires the inspectors of election to file a statement and certificate, setting forth the number of votes given for each person for each respective office, with the clerk of the common council, within twenty-four hours after the completion of the canvass, and that

"the common council, at its meeting thereafter, shall canvass such returns, and determine and declare the result." (Laws, 1855, ch. 86, § 11.) The officers chosen are, on or before the time when their terms commence, to take the oath of office prescribed by law. (Id., § 12.) The plaintiff had given in evidence a certificate of the determination of the common council at a meeting held on the 15th April, one week after the election. This was at least *prima facie* · evidence of the act of the common council. The document was given in evidence without objection, and it was not attempted to controvert the fact that the proceedings of the council set · forth in it had taken place as stated. But · the defendants offered to prove another canvass before the common council, at a meeting on the 6th May following. It is not stated in the offer, or mentioned in the case, that the new canvass resulted in electing Mr. Quackenbush, but such I suppose was the intention of the offer. The evidence was excluded, and this is the point of the first exception. The · act does not prescribe that the canvass shall be made at the first meeting of the council after the election, a word having apparently dropped out in transcribing or printing the section. The meaning, as it stands in the statute book, is, that the canvass shall be made at some meeting of the common council after the election. It was regular and legal to perform that duty at the first meeting, and this was what was done, as stated in the certificate. Having been once legally performed, the power of the council was exhausted. The board had no right to reverse its decision by making a different determination. The court was therefore right in rejecting the evidence which was offered.

The second exception was to the decision by which the court excluded the inspectors' returns. The object, I suppose, was to show that the returns elected Mr. Quackenbush and not Mr. Perry. But the law having committed to the common council the duty of canvassing the returns and determining the result of the election from them, and the council having performed that duty and made a determination, the question as to the effect of the returns was not open for a determination

by a jury in an action in which the title of the officer came up collaterally. If the question had arisen upon an action in the nature of a *quo warranto* information, the evidence would have been competent. But it would be intolerable to allow a party affected by the acts of a person claiming to be an officer, to go behind the official determination to prove that such official determination arose out of mistake or fraud.

It follows that the remaining exception was not well taken. The court excluded the determination to remove Conlon, made at a meeting consisting of Mr. Quackenbush, acting for that purpose as mayor, and the recorder and an alderman. The mayor is an essential member of the council provided for hearing charges against a policeman, unless he be absent, in which case the chief of police is to take his place. Mr. Quackenbush was not the mayor, and consequently no legal body for hearing these charges was assembled. The act of removing Conlon was consequently void, and he was not removed. The papers which were offered were properly rejected.

It seems probable that the action might have been successfully defended on the ground that Conlon had failed to perform the duties of his office, and had acquiesced in the irregular order for dismissal which had been made. It seems he admitted himself to be guilty of the charges brought against him, and there is an inference that he retired from the police, arising out of the want of any proof or allegation of a subsequent performance of duty as a policeman. But there is no finding of facts to raise that question. The defendants' counsel seem to have chosen to place their defense upon the allegation of title in Mr. Quackenbush to the office of mayor, and they raised no question except that which related to the evidence of his election and the validity of his acts. Having failed to sustain their position on these questions, they cannot ask to have the judgment against them reversed.

BROWN, J. James Conlon, the plaintiff's assignor, was one of the policemen of the city of Albany, duly appointed on the 9th of April, 1856, to serve for the term of two years

from the 20th of May thereafter, and until his successor should be appointed or he was removed for cause. The exception to the proceedings at the circuit was one taken to the rejection of the defendants' evidence, and it presents the principal question upon which the plaintiff's right to maintain the action depends. By the eleventh section of the act of April 4th, 1851, the inspectors at an election for municipal officers in the city of Albany shall certify and declare the result of the canvass of the votes, and file such certificate and statement in the office of the clerk of the common council within twenty-four hours after the completion of the canvass, and the common council at its meeting thereafter shall canvass the returns and declare the result. There was an election for mayor and other officers in the city on the 8th day of April, 1856, and for the purpose of showing who was duly elected mayor, the plaintiff produced and proved the certificate of the members of the common council, dated April 15th, 1856, declaring that Eli Perry having received the greatest number of votes was duly elected. This certificate was in due form, and was produced from the files of the clerk of the common council. It was then proved that Eli Perry qualified and entered upon the duties of his office as mayor. Policemen are removable from office for cause shown by the mayor, and in his absence the chief of police, and the recorder and one alderman, who are to examine the charges, hear evidence, &c., upon both sides, and acquit, remove or suspend in their discretion. The defense was that Conlon had been removed from his office for drunkenness and misconduct after a trial had before the mayor, recorder and Alderman Benson, on the 6th of November, 1856, at which Conlon appeared and was heard in his defense. To lay the foundation for this defense, the defendants offered evidence to show that on the 6th of May, some time after Eli Perry was declared duly elected, the common council of the city made another canvass of the votes, and filed another certificate, in which it was declared that John V. P. Quackenbush was duly elected mayor, &c. This evidence was upon objection rejected, and the defendants excepted. An offer was

then made to read in evidence the returns of the canvassers and inspectors for the election on the 8th of April, 1856, for the purpose of showing that John V. P. Quackenbush had the greatest number of votes for the office of mayor at the election.

This evidence was also rejected upon objection, and the defendants again excepted. The defendants' counsel next offered in evidence the return of a trial of Conlon upon the charge of drunkenness and misconduct, by John V. P. Quackenbush, acting as mayor, Recorder Paddock and one of the aldermen of the city, Conlon's plea of guilty, and his dismissal from office by such city officers. This evidence was objected to and rejected, and the defendants excepted. The legality of the trial of Conlon, and the judgment of dismissal said to have been rendered against him, depended upon the question who was the mayor of the city at the time, and the effort of the defendants was to show that Quackenbush was the mayor at the time of the alleged trial, and the defendants claimed that, notwithstanding Perry had obtained the canvassers' certificate, Quackenbush really had the most votes, and was entitled to the office. The judge decided that Mayor Perry's title to the office could not be the subject of investigation and inquiry in this action, and on that account rejected the evidence. This was entirely right. Eli Perry had the certificate of the canvassers, the authority appointed by law to examine the inspectors' returns, and determine who had the most votes and the right to the office. he was therefore the mayor *de facto*, and notwithstanding John V. P. Quackenbush might have received the greatest number of the votes, and be rightfully entitled to the office, yet, wanting the certificate, he was not, for the purposes of the trial and dismissal of Conlon, the mayor of the city, and the proceeding upon which the defendant relied to show that Conlon was not a policeman at the time the service for which he claimed compensation was rendered, was *coram non judice* and void. The judgment should be affirmed.

All the judges concurred in affirming the judgment except PORTER, J., who did not sit, having been counsel.