THE STATE, EX REL. JOHN O'DONNEL, v. AUGUST DUSMAN.

1. *Mandamus* is the appropriate writ to compel the delivery of official books and papers to the person entitled to the office.
2. The fact that an application for a writ of *mandamus* involves, incidentally, the question of the title of two claimants to the same office, will not, in itself, prevent the allowance of the writ.
3. The determination of the election board cannot be attacked, upon an application for a *mandamus*.
4. Where there is no determination of the election board, legally proven, resort may be had to other evidence of the relator's title; but if there is doubt concerning his title, the writ will not go.
5. At an election in Weehawken township, five persons were voted for as members of the township committee on each of two classes of tickets. A majority of the five having the greater number of votes, appointed the relator treasurer of the township. The old committee, alleging that there were less than two hundred legal voters in the

O'Donnel v. Dusman.

township, claimed that, by act of 1877, *p.* 61, only three persons could be elected town committee; that, therefore, every ballot containing five names was, by Section 46 of the Election Act, null, and that, therefore, there was no election of any township committee. The old committee, on the ground that a vacancy existed, appointed a new committee of three, who appointed another party as treasurer. *Held*—

1. That had there been a legal determination of the election board, that the five who appointed the re'ator were elected, it would be conclusive as to his title on this application.

2. That parol evidence is not admissible to show such determination in this case.

3. That no determination having been shown, other evidence is admissible to show relator's title, but the evidence that there were less than two hundred legal voters in the township, is such as to raise so much doubt as to his right, that the writ should not be allowed.

On rule to show cause why a *mandamus* should not issue to the respondent, to compel him to deliver books and papers belonging to the office of treasurer of the township of Weehawken, in Hudson county.

Argued at June Term, 1877, before Justices SCUDDER, DIXON, and REED.

For the relator, *F. Kingman.*

For the defendant, *J. H. Lippincott.*

The opinion of the court was delivered by

REED, J. By an act approved March 8th, 1877, (*Laws,* 1877, *p.* 61,) it was provided, "that at all town meetings held after the 1st day of January, 1877, the several town and township committees to be voted for and elected in the said towns and townships, shall consist of three persons in towns and townships containing less than two hundred legal voters, and in towns and townships having three hundred or more legal voters, shall consist of five persons." At the township election held in the township of Weehawken, on April 11th, 1877, two classes of tickets for members of the

O'Donnel v. Dusman.

township committee were voted; upon the ballots of each class were the names of five persons. The ballots containing the names of Noonan, Allen, Frost, O'Donnel, and Dusman received a majority of the ballots.

On May 7th, 1877, three of these—Frost, O'Donnel, and Allen—met, and, in the absence of the old township clerk, appointed Frost, one of their number, clerk.

On the 14th of May, 1877, they again met, and appointed John O'Donnel, the present relator, treasurer.

At a meeting held on May 17th, they accepted his bond. He (O'Donnel), on the 15th or 16th of May, demanded the books and papers of the office from August Dusman, the respondent, who was the treasurer of the preceding year. Dusman said that the books and papers were in the hands of Mifflin Paul, his deputy treasurer. O'Donnel then made demand upon Paul.

Paul did not deliver them to the relator, but thereafter, on June 4th, 1877, by direction of the respondent, passed them over to Noonan, who claimed to be the legal treasurer.

A rule to show cause why a *mandamus* should not issue in this case, was served May 30th, 1877.

The response to the rule is an attack upon the title of the relator to the office of treasurer of this township. It is insisted that the number of legal voters in Weehawken township was, at the time of the election, less than two hundred, and that, therefore, by operation of the act of 1877, only three persons could be elected to the office of township committee; that, by force of the forty-sixth section of the act to regulate elections, (*Rev., p.* 344,) every ballot containing more than three names, shall be deemed and taken to be of no effect; that all the ballots cast at that election, excepting No. 79, contained more than three names; that No. 79 had upon it three other names; that, therefore, there was no election of the five whose names were on a majority of the ballots, or any three of the said five; that they, or any three of them, had no authority to elect a treasurer, at all, and their act in appointing O'Donnel, was void; that the relator, conse-

quently, has no standing in this court to request the use of this writ.

The township committee of the preceding year treated this election for township committee as a nullity, and in pursuance of the power lodged in them by Sections 13, 103 and 104 of the act incorporating townships, proceeded to appoint a new committee, on the ground that there existed a vacancy. They appointed Van Deusen, Lundie and Noonan. This committee appointed Noonan as Treasurer, and to him the books and papers of the office were turned over, by order of the respondent.

The question presented is, whether this court will send its writ of *mandamus* to Dusman, commanding him to deliver these papers and books to the relator, who claims the right of possession by virtue of his appointment by the committee who claim to have been elected. The use of the writ of *mandamus* for the compulsory transfer of the books, records and appurtenances of an office to the person showing a title to it, is of early origin. *Rex* v. *Owen*, 5 *Mod.* 314; *Rex* v. *Clapham*, 1 *Wils.* 305; *Tapping on Mandamus* 99.

In the case of *State, ex rel. Newark & N. Y. R. Co.*, v. *Goll*, 3 *Vroom* 285, the secretary of a railroad company was compelled to deliver to the company the book of minutes of the proceedings of the corporation.

In the case of *State* v. *Layton*, 4 *Dutcher* 244, a jail-keeper was ordered to deliver to the board of chosen freeholders of Hudson county the possession of the jail. "These buildings," says Whelpley, J., "are like the insignia of office, official rolls, &c."

The use of this writ for the purpose of placing in the hands of the officer all the appliances essential to the conduct of the office, in accordance with his duty toward the public, is established in this country by numerous cases. *High on Ex. Leg. Rem.*, §§ 74, 76.

But while the exercise of this general jurisdiction is well established, it is limited by many rules which the courts have laid down as guides, by which their discretion in the allowance of the writ will be largely controlled.

O'Donnel v. Dusman.

A number of objections were urged against the allowance of this writ, as being within some of those rules which restrict its use. The most forcible objection urged is, that this proceeding is intended as a method of determining the title of two claimants of the office of treasurer of the township of Weehawken. It is said that the question of the allowance or disallowance of this writ involves the question of the legal constitution of the rival township committees, through which, respectively, these officers claim their appointments.

The rule stated by Mr. High is, " If it be apparent to the court that instead of a proceeding whose object is only to get possession of the books and insignia of the office, the writ is invoked, in reality, to test the title to the office, and that the question of title is the real point in issue, it will refuse to lend its aid by *mandamus.*" § 77.

It is, of course, not meant by the preceding statement that title to an office can be definitively determined by *mandamus.* A proceeding in which one of the claimants is not a party, can, on no legal principle, conclude his rights to the office.

In *People* v. *Head*, 25 *Ill.* 325, it is said : " Whatever our decision may be, it cannot affect in the least the contest now going on in the legal tribunals. We can only determine whether the relator is entitled to the records pertaining to the office. It is true that this involves, incidentally, the inquiry as to who is entitled to enjoy the office for the time being, but we by no means settle the question whether the relator was legally elected or not."

In *Layton* ads. *State*, 4 *Dutcher* 576, the Chancellor says : " The award of *mandamus* does not purport to adjudge or decide any right. It is rather in the nature of an award of execution than of a judgment. It is the mode of compelling the performance of a duty, or enforcing an existing right, rather than deciding what the right or duty is. The award has no finality. It concludes nothing. If the writ is denied, the relator cannot have error ; and if granted, the award could not be pleaded in bar."

The rule that *mandamus* will not be awarded when its

object is to test the title to an office claimed by two or more parties, amounts to a rule of discretion. Where the awarding of the writ must necessarily be based upon the validity of the title of one of two claimants, and while it does not conclude, it forestalls the opinion of the court upon a subsequent proceeding by *quo warranto*. This, in itself, is strong ground, in many instances, for a refusal of the writ.

Where the respondent holds the certificate of election, no writ would be allowed by one claiming a better title. Where the relator's title is dependent upon the cessation of the term of office of a person actually exercising the duties of the office, and claiming that his office has not become vacant, the court will not award *mandamus*. State v. *Pitot*, 21 *La. An.* 336.

Many circumstances may control the court in exercising its discretion, but it is clear that where the relator shows a title, *prima facie* or otherwise, the mere fact that there is another person claiming the same office will not operate, in itself, to prevent an allowance of the writ.

His title need only be a *prima facie* one. If he holds the certificate of election, it is sufficient. The question here arises, what evidence has the relator adduced to manifest his title to this office, and his right to this writ? That he was appointed by the majority of the elected committee is not disputed; nor is it denied that he qualified and gave the requisite official bond.

But this is a case like that of *People* v. *Stevens*, 5 *Hill* 616, where we must revert to the power which made the appointment. What is shown of their official existence as a legal board? They were voted for at a township election. The election was by ballot. The clerk made no entry in the book of record of the township of the names of the persons and the offices to which they were elected, pursuant to Section 16 of the township act. *Rev.*, *p.* 1196. He did post notices in three public places, pursuant to Section 17. He also signed, he says, three written certificates or statements of the result of the election. One went into the ballot-box; one the judge of election took, and one he passed to the respondent.

All these notices and statements, he says, announced the election of the five as the township committee. It is also proven that the result was announced by the judge and by the clerk.

It is insisted that all this shows a determination by the legally constituted board of election that these five were elected ; that upon this proceeding such determination is conclusive as to the title of the relator.

That the return of a board of election is conclusive upon any collateral proceeding is settled by numerous and respectable authorities. *Hadley* v. *Mayor*, 33 *N. Y.* 603; also, same case, with notes thereto, in *Brightley's Lead. Cas. on Elections* 313; *Hulseman* v. *Rems*, 41 *Penn. St.* 396; *Brightley's Lead. Cas.* 319, *notes.*

That *mandamus* is such proceeding, when it involves the result of an election, seems also settled. *High on Ex. Rem.*, §§ 74, 75.

But is there any legal evidence of a determination of this board ? It was held in the case of *Prickett, Spenc.* 134, which was upon an application for a writ of *mandamus* to a township committee, to compel them to accept a bond and administer the oath of office to a person who alleged that he had been elected constable, that the best evidence of the election was the book of minutes, in which, by Section 16 of the township act, the clerk was directed to enter the names of the persons elected. No such entry was made in this case.

The court also held, in the last case, that the notices posted, or the certificate transmitted to the county clerk, by virtue of Section 17 of the township act, were not evidence in that case. There is, it is true, in that case, an intimation that this was upon the ground that until it was shown that there was no entry in the township book, such an entry would be presumed, and, being the best evidence, must be produced, unless destroyed. The inference, therefore, arising, that where it affirmatively appeared that no such entry was made, such certificates might be produced as secondary evidence.

However that may be, there is no proof of such certificates

or of the notices.   If admissible at all, they should have been produced, or their absence accounted for.   Nothing of that kind is done.   It is not shown but that by due diligence they could have been produced, but it appears that there was nothing in the way of their production.

Parol evidence of their contents is inadmissible; nor is the testimony of the announcement of the result any proof of the determination of the board.

Where no certificate or written statement is required by the law, it may be that there a verbal announcement of the result would be conclusive.

But here was an official method of recording and stating the result enjoined.   The design was to have an official statement.   The township act provides for a record of the result. The act providing for the voting of township by ballots says, " that the result shall be ascertained in the same manner as other elections, and stated according to law."   If the record or statement was destroyed, parol evidence of its contents, as of the contents of a lost or destroyed judgment, would be competent.

But where no determination of the board has been entered, as required by law, you can no more receive evidence of a parol determination, than you can prove the judgment of a court of record before it has been entered of record.   There is, therefore, no such determination of the board of canvassers as gives the relator a *prima facie*, and, on this proceeding, a conclusive title.

Although the title is not conclusively manifested by a determination of the board, yet I think if he has shown by all the evidence that he has a clear title, he should be allowed the benefit of the testimony.   In the case of *State, ex rel. Love*, v. *Freeholders of Hudson Co.*, 6 *Vroom* 269, there had been an election for chosen freeholders.   The conclusion and statement of the canvassers had been made out on a wrong basis, and were treated as, and declared by the court to be void.   The court held that they would not require the relator in the first instance to prosecute a *mandamus* to compel

O'Donnel v. Dusman.

another and a correct statement of the result, but treated the avoidance of the certificate as a failure of the best evidence as to who were elected, and allowing secondary evidence of the result of the election.

But the moment we go into matters beyond the return, we are met by a difficulty which would not have appeared, had the return been conclusively proved. The difficulty consists in the fact of the very strong evidence that goes to show that there were not two hundred legal voters in this township at the time of this election, and that there could be elected but three persons as town committee. I say this difficulty first appears, because, had the return of the board of canvassers been properly proved, I do not think this difficulty could have been urged against the return. There are instances where a return of more persons elected than the office permits, would be invalid.

If there should be a determination that two persons were elected county clerk, the return would be manifestly bad. It would be within the range of judicial cognizance that there was but one clerk, and the return would not state the return of any one, and would, therefore, upon its face be bad. Where, however, an official position may be filled by a number of persons, and that number varies according to the presence or absence of some matter beyond the knowledge of the court, the rule would be otherwise, if the return shows the election of any number which any condition of fact will permit.

By the act of 1877, three or five members are eligible, just as the township happens to contain more than three hundred, or less than two hundred legal voters. There is no standard mentioned of determining the number of legal votes. The election of either three or five members may be entirely correct, and its invalidity can only be ascertained by an investigation of matters extrinsic the record and the judicial knowledge of the court.

As long as the determination of the board of canvassers is the basis of the relator's right, its conclusive character on *mandamus* would arrest any inquiry of that nature.

VOL. X.                    2 Y

But there is no such return proven in this case, and all the evidence in the case is opened as widely for investigation as if this were a proceeding upon a *quo warranto*.

That evidence shows so much uncertainty and grave doubt as to the title of the relator, that the writ should not go. Without asserting that his title is invalid, it is sufficient to say that the evidence that there were in the township at the time of this election, less than two hundred legal voters, is very strong. If that was so, then only three persons were eligible as township committee. Every ballot containing more than three names was null. The names of none of these five were on any ballot containing three names or less.

There is such an absence of the proof of title in the relator, that the writ ought not to go.

The rule to show cause is discharged, with costs.