Mr. Justice Cox
delivered the opinion of the court:
After stating the case, he proceeded :
A general demurrer is filed, and one of the points noted for argument is, that the wrong complained of is a tort to the person which does not survive. The only torts to the person that we are familiar with are torts.involving physical violence to the person, or nuisances affecting personal health or comfort or injuries to the reputation. It is evident that none of these is the gravamen of this case ; it is not brought for any physical injury to the person, but for injury to property and contract rights. The allegations *146 essential in an action of this kind would be, that the decedent undertook and promised to perform certain duties for the defendant, and that the defendant promised certain compensation therefor ; that plaintiff was ready and willing to perform those duties, and was prevented from so doing by the defendant ; and a very slight emendation of the declaration in this case would convert it into one of that tenor. It is essentially a case which arises ex contractu, and it is clear that such a cause of action does survive to the personal representative. We, therefore, do not think the point of law which was made below, as one of the grounds of demurrer was sufficient to sustain it. But upon general demurrer, we are not confined to the points which may have been expressly noted, and if we find that the declaration cannot be sustained on any ground, it is our duty to say so.
This, therefore, brings us to the question whether on any ground the declaration is demurrable.
It is to be observed, in the first place, that this office from which the decedent was ousted, was not originally created by an act of Congress, but was purely a creature of the District government under a law passed by that government, and one under ordinary circumstances which it could repeal at pleasure. The complaint here in the declaration, as amended by consent, is that the defendant, that is to say its Board of Fire Commissioners, contrary to the law, &c., removed the decedent from office. If the Board of Fire Commissioners removed the decedent from office in violation of the law of this District, it would be simply void and inoperative as affecting the rights of the decedent.
But the complaint is against the District of Columbia; the responsibility for this act is charged upon the District. How it became the act of the District is not explained. The only mode in which it could be as we understand it, is by legislation either authorizing or ratifying the act, and as far as this might conflict with existing law, it would be repealing legislation. Dnder ordinary circumstances, it would be perfectly within the power of the District government to repeal any of its own laws. However that *147 may be, it is sufficient for our inquiry, that the act complained of is complained of as the act of the District government ; it is averred to be the act of the District government, and the demurrer admits that fact; and the question arises whether the District government may remove a person from office without cause, and in a manner different from that which the existing laws provide, who has been appointed under those laws to hold during good behavior.
It seems to us, in the first place, that this legislation was intended to prescribe a rule of action for the Board of Fire Commissioners ; they were authorized to appoint to, and to remove their subordinates from office, and it is against them and their power of removal, thus provided, that the incumbents are to hold during good behavior. They, the board, were not to have power to remove, except upon charges and an opportunity being given to the party complained of to appear and answer, in a quasi-judicial proceeding. But this was not intended as a restriction of legislative power. A legislative body cannot pass a law, which it cannot repeal at pleasure, except in a case where the law is something more than a mere law, and amounts to a contract with the citizen : and there is no ground on which Hines’ right to hold his office in spite of the District government can be plausibly maintained, except that his appointment, having reference to the existing laws, was a contract between him and the District government that he should hold office during good behavior.
Has, then, an appointment to a public office any such operation ? We think this question is answered for us by the Supreme Court of the United States. In the case of Butler et al. vs. The State of Pennsylvania, 10 How., 404, Butler and others had been appointed canal commissionei’s under a law which provided that they should hold their offices from the first of February for one year, and that their compensation should be four dollars per diem. In the midst of the year, in April, 1843, the legislature passed another law that the compensation shonld be only three dollars per diem, and in the following October the com *148 missioners should be elected by the people ; thus both cutting off the term of office and reducing the compensation In a controversy with the accounting officers of the State, these commissioners claimed that their appointment was a contract, in virtue of which they were entitled to compensation for the full year, and this contract was protected by the Constitution of the United States against State legislation. But the Supreme Court said :
“ The contracts designed to be protected by the tenth section of the first article of that instrument (the Constitution of the United States) are contracts by which perfect rights, certain, definite, fixed, private rights of property are vested. These are clearly distinguishable from meásures or engagements adopted or undertaken by the body politic or State government for the benefit of all, and from the necessity of the case, and according to universal understanding, to be varied or discontinued as the public good shall require. The selection of officers, who are nothing more than agents for the effectuating of such public purposes, is matter of public convenience or necessity, and so too are the periods for the appointment of such agents ; but neither the one nor the other of these arrangements can constitute any obligation to continue such • agents, or to re-appoint them after the measures which brought them into being shall have been found useless, shall have been fulfilled or shall have been abrogated as even deterimental to the well-being of the public. The promised compensation for services actually performed and accepted, during the continuance of the particular agency, may undoubtly be claimed, both upon principles of compact and of equity; but to- insist beyond this on the perpetuation of a public policy, either useless or detrimental, and 'upon a reward for acts neither desired nor performed, would appear to be reconcilable with neither common justice nor common sense. The establishment of such a principle would arrest, necessarily, everything like progress or improvement in government ; or if changes should be ventured upon, the government would have to become one great pension establishment on which to quarter *149 a host of sinecures. It would especially be difficult, if not impracticable, in this view, even to remodel the organic law of a State, as constitutional ordinances must be of higher authority and more immutable than common legislative enactments, and there could not exist conflicting constitutional ordinances, under one and the same system. It follows, then, upon principle, that in every perfect or competent government, there must exist a general power to enact and to repeal laws ; and to create and change or discontinue the agents designated for the execution of those laws. Such a power is indispensable for the preservation of the body politic, and for the safety of the individuals of the community.”
They further refer to a case in Pennsylvania, in which it is said by Justice Duncan, delivering the opinion of the court :
“ These services, rendered by public officers, do not, in this particular, partake of the nature of contracts, nor have they the remotest affinity thereto. As to a stipulated allow'ance, that allowance, whether annual, per diem or particular fee' for particular services, depends on the will of the lawmakers ; and this, whether it be the legislature of the State, or a municipal body empowered to make laws for the government of a corporation. This has been the universal construction. * * * The allowances, the compensation, the salary, the ,fees, of all other officers and members of the legislature depend on the legislature, who can, and who do, change them, from time to time, as they conceive just and right.”
We have been referred, in the brief, to three State decisions, in which the right of officers, irregularly removed from office, to sue for their salaries, has been sustained. One was Hadley vs. The Mayor of Albany, 33 N. Y., 603. But upon examination of the case w:e find that the officer, who was a policeman of the city of Albany, was appointed under a State law, and not under an ordinance of the city of Albany. The state law provided the manner in which he should be appointed and removed ; and the removal com *150 plained of was held by the court not to be in compliance with the law of the State. It never seemed to have occurred to anybody that this would have involved a claim for damages against the State, if the State has sanctioned the removal in the way in which it was made. The other two cases are precisely of the same description. These cases steer clear of the rule laid down by the Supreme Court and which must be govern this case.
"We hold, therefore, that upon the face of this declaration, the plaintiff has no right of action, and that the demurrer below was properly sustained.