## Humbertson v. City of Connellsville.

*Policeman — Discharge — Hearing — Authority of mayor — City of third class—Acts of May 27, 1919, and July 11, 1923.*

1. The power of the mayor of a city of the third class under the Act of May 27, 1919, P. L. 310, to hear and determine complaints against police officers and submit his report to council is not taken away by the Act of July 11, 1923, P. L. 997, giving the right of suspension to the superintendent of public affairs pending action by council, since the latter act provides no exclusive method of hearing complaints and jurisdiction of the mayor and council is concurrent.

*Police officer—Salary—Assumpsit—Legality of discharge—Laches.*

2. An action of *assumpsit* does not lie by one who has been discharged from service to recover salary which accrued subsequent to such discharge, unless the illegality of the discharge is admitted or has been established in a direct proceeding brought for that purpose.

3. A delay of two years in bringing such action warrants the conclusion that the claim, if any existed, has been waived.

*Assumpsit* by a police officer for salary accruing after alleged wrongful discharge. C. P. Fayette Co., Sept. T., 1925, No. 909.

*Dean D. Sturgis*, for plaintiff.

*S. R. Goldsmith* and *J. Kirk Renner*, for defendant.

MORROW, J., Dec. 6, 1926.—This suit is an action of *assumpsit* brought by Chauncey Humbertson against the City of Connellsville. The parties

agreement filed dispensed with trial by jury and submitted the decision of the case to this court, as provided by Act of Assembly of April 22, 1874, P. L. 109. Some time after the testimony was taken, the matter was argued and it is now before us for adjudication.

In certain rulings on the admission of evidence, the offers were received with a statement to the effect that the competency thereof might be determined later. In all such instances the rulings are allowed to stand, the evidence so admitted being considered as in the record.

We find as facts:

1. The plaintiff is a resident of the City of Connellsville, and on Nov. 27, 1920, after passing the civil service examination, was employed as a policeman or patrolman in said city at a salary of $135 per month, and continued as such police officer until Sept. 21, 1923.

2. The defendant is a municipal corporation and a city of the third class.

3. On Sept. 21, 1923, complaint was made against the plaintiff in the discharge of his duties; that he had conducted himself in a way unbecoming an officer; that he had committed an assault and battery upon Harry McClain, and had unlawfully and wantonly pointed a revolver at him.

4. A hearing on said complaint and charges was held before the Hon. C. C. Mitchell, Mayor, on the evening of Sept. 21, 1123, at which hearing witnesses were called and heard, the plaintiff herein, Humbertson, testifying in his own behalf.

5. The mayor found that Humbertson was guilty of the charge of assault and battery and recommended that he be discharged from the service of the Police Department of the City of Connellsville, the same to be presented to city council at its first regular meeting. All this was reported by the mayor to council for its action thereon. And in the meantime, pending action by the city council in the matter, the mayor suspended the said Humbertson from duty.

6. The next meeting of city council was Oct. 8, 1923. Humbertson went to his meeting, taking with him his attorney, John Duggan, Esq., who was there advised by one of the councilmen to the effect that council would go along with the mayor in the matter, and no further hearing was held, but council that night, four of its five members being present and voting affirmatively, adopted his resolution:

"Resolved, that Council sustain the action of the Mayor in the dismissal from the service of the Police Department of Patrolman C. E. Humbertson, following charges of assault and battery as preferred under date of September 21st."

7. Mr. Duggan advised Humbertson to the effect that he didn't have time to bother further with this matter and did not bother with it after that night. Mr. Humbertson did nothing more towards getting the matter considered further by council, prior to instituting the present suit in August, 1925, except that, shortly before suit was entered, he did, on advice of Mr. Duggan, to a council meeting and inquire what was going to be done about his case, and was told by the mayor that he had given him a hearing, which was all that was necessary. He never did anything else by action in court or otherwise except enter the present suit in assumpsit for salary. On Oct. 1, 1923, he surrendered his badge of office and police equipment to the city upon demand, was paid the money then due him, and never thereafter, prior to this suit, did he demand payment of any salary. He failed to take any action for reinstatement, and neither attempted to perform any act of police duty nor offered his services as policeman, although he states that he was ready and

willing to work. There is no evidence that he asserted that he was of right a member of the police force or that he claimed the right to be put on duty. During a considerable portion of the period for which salary is sought in this suit he was employed outside the City of Connellsville. His earnings at other work during this period amounted to $2035.

8. The mayor advised Humbertson to the effect that he had been dismissed, and that he could do nothing about putting him back on the service until after his hearing in Uniontown, a criminal prosecution having been brought against Humbertson in this same matter.

9. The criminal action instituted against Humbertson included charges of assault and battery, pointing firearms and carrying concealed weapons. The prosecutor was Harry McClain. On Dec. 6, 1923, the grand jury found a true bill. On Dec. 13, 1923, the defendant did not appear in court for trial and his bail was forfeited. A year later, Dec. 10, 1924, the defendant was in court and plead not guilty. A jury was sworn and the case was tried. On Dec. 11, 1924, the jury returned a verdict that the defendant, Humbertson, was not guilty, but that he pay the costs.

## Discussion.

And now we come to a consideration of the law applicable to the facts herein.

Article VII, section 7, of the Act of June 27, 1913, P. L. 568 (597), providing for the government of cities of the third class, as amended by Act of May 27, 1919, P. L. 310 (330), provides in part as follows:

". . . Policemen shall obey the orders of the mayor and make report to him, which report shall be laid by him before council whenever required. The mayor shall exercise a constant supervision and control over their conduct and hear and determine all complaints against them in the discharge of their duties; and upon finding any such complaint well-founded shall submit his report thereon to council for its action, and in the meantime, pending action by council, the mayor shall have power to suspend such policeman from duty.'

Section 6 of the Act of June 20, 1917, P. L. 618, as amended by the Act of May 17, 1919, P. L. 204, and as further amended by the Act of July 11, 1923, P. L. 997, provides:

"All employees of said police department shall be subject to suspension by the superintendent of the department of public affairs for misconduct or violation of any law of this Commonwealth, any ordinance of the city, or regulation of the said police department, pending action by the city council upon the charges made against any such employees; and on hearing before the city council, where they may be represented by counsel, they may be fined or suspended for a period not to exceed thirty days, with or without pay, or they may be discharged by city council, if found guilty of the charges made against them: Provided, however, that the said superintendent of the department of public affairs may, for misconduct or violation as aforesaid, suspend an employee of said department of police for a period not to exceed ten days, with or without pay, without preferring charges and without a hearing of council: Provided further, however, if it should become necessary to reduce the number of men in said department for purposes of economy, seniority rights shall prevail, and any and all removals for such cause or causes shall be from the members last appointed, and the member or members serving the shortest time shall be removed first, but members with longer times of service may be discharged for cause."

The amendment of 1923 simply adds to the section, as amended in 1919, the provision relative to reduction in the number of men in the police department when necessary.

The plaintiff contends that this Act of 1923 repeals the Act of May 27, 1919, authorizing the mayor to hear and determine all complaints against employees of the police department in the discharge of their duties, and, upon finding any such complaint well-founded, to submit his report thereon to council for its action; that this Act of 1923 was not complied with, in that he was not given such a hearing by the city council as therein contemplated; that he was not legally discharged, and that he can recover in this action of *assumpsit* salary from the date of the alleged discharge to the date of entry of this suit.

Prior to this amendment of 1923, the Supreme Court, in Buttorff et al. *v.* York City et al., 268 Pa. 143, held that the above-mentioned Acts of May 17 and May 27, 1919, must be construed together, and that, so construed, the right of council to hear and determine complaints against employees of the police department in the discharge of their duties is limited to those submitted by the mayor after finding them well-founded. This Act of 1923 contains no repealing clause, and it does not seem to provide an exclusive method of hearing such complaints. Construing these acts together, it is not clear why procedure under the Act of May 27, 1919, may not be followed, and why it cannot also be held that council has original jurisdiction, by virtue of said Act of 1923, to hear a complaint against a policeman without waiting till the mayor reports that the complaint is well-founded. The jurisdiction as to hearing the complaint originally may be concurrent. That there should be two methods of hearing complaints originally, that is, in the first instance, may have been one purpose or effect of this last amendment. The result in practice would be that the mayor would, for the most part, hear such complaints originally, since council is not in session more than once or twice a month. If determined to be well-founded, the complaint would then be submitted to council for final action. In other cases where the mayor and council did not work in harmony and the council felt that the mayor had failed to report to it as well-founded complaints that should have been so reported, council would have jurisdiction to hear them in the first instance and act thereon independently of the mayor. This original jurisdiction council does not have, unless it is given by this amendment of 1923: Buttorff et al. *v.* York City et al., 268 Pa. 143. It would not follow from this construction that the council must hear originally each complaint. It would mean that council has the right to do so.

The evidence submitted and facts found, in our opinion, show compliance with the Act of May 27, 1919, *supra*, in the discharge of the plaintiff. If we are wrong in the view that this act is not repealed by the Act of July 11, 1923, *supra*, then the fact remains that council, on Oct. 8, 1923, adopted a resolution that was in effect at least an attempted dismissal of the plaintiff. Under this Act of 1923, the council had authority to discharge the plaintiff if it found him guilty of the charge of assault and battery, and we think the effect of the action of council was to discharge the plaintiff even under this Act of July 11, 1923.

In this view of the case, it is not necessary to discuss the proposition that, even conceding the plaintiff's discharge illegal, then his suspension is still in force, because it was to continue pending action by council on the charges, and council has never dismissed these charges.

Humbertson v. City of Connellsville.

The plaintiff went to this meeting of council on Oct. 8, 1923, in company with his attorney, and, assuming that he did not get the hearing he desired and to which he was entitled under the Act of July 11, 1923, yet he remained wholly passive for almost two years thereafter. Actions may be such as to warrant the conclusion that a claim, if any, is waived: Gibbs v. Manchester, 61 Atl. Repr. 128 (130).

Irrespective of the fact whether the plaintiff's discharge is regulated by the above-mentioned Acts of May 27, 1919, and July 11, 1923, construed together, or by the latter act solely, it is our opinion that he cannot, under the facts, recover in this action of *assumpsit* brought for salary. "In order to recover salary, his title to the office must first be proven. An action to recover the salary is not the proper way to determine that fact. The proper practice is to seek reinstatement in direct proceeding brought for that purpose: Hadley v. Mayor of City of Albany, 33 N. Y. 603; Thompson v. Board of Education, 201 N. Y. 457. Reinstatement by a competent legal tribunal in a direct proceeding for that purpose is a condition precedent to the right of recovery. Title to office cannot be tried in an action to recover salary incident thereto: 28 Cyc., 450; Dillon on Mun. Corp. (5th ed.), § 429, note:" Rush v. Philadelphia, 62 Pa. Superior Ct. 80 (84).

The plaintiff relies upon Storm v. City of Scranton, 77 Pa. Superior Ct. 283, as authority sustaining his right to maintain this action of *assumpsit* for salary. In that case the question was not whether the plaintiff had been illegally dismissed, but whether any person who had authority to dismiss him had done so or attempted to do so. The record contained no evidence which even remotely tended to establish that any person connected with the city government had attempted to dismiss the plaintiff. The facts distinguish it from the instant case, where the city council having authority to dismiss the plaintiff did discharge him or attempted to do so. "A municipal officer who is discharged from service is not entitled to recover his salary for any period during which he did not actually perform service, unless the illegality of his discharge is admitted or ascertained by a direct proceeding to set aside the dismissal. It cannot be inquired into collaterally in a suit to recover salary for services not performed:" Keegle v. Hudson County, 122 Atl. Repr. 606, affirmed in 130 Atl. Repr. 919. See, also, Van Sant v. Atlantic City, 53 Atl. Repr. 701; Lee v. Mayor, etc., of Wilmington, 40 Atl. Repr. 663.

We, therefore, state as follows our conclusions of law:

1. The plaintiff was legally suspended from duty as a police officer of the City of Connellsville by the mayor on Sept. 21, 1923, this suspension continuing pending action by the city council.

2. The plaintiff was legally discharged from employment as a police officer of the City of Connellsville by action of its council on Oct. 8, 1923.

3. The plaintiff cannot, under the facts in this case, maintain this action of *assumpsit*.

4. Judgment should be for the defendant.

### Order.

And now, Dec. 6, 1926, the prothonotary is directed to file this decision and the requests of counsel for findings of fact and conclusions of law, with the answers thereto, and forthwith give notice thereof to the parties or their attorneys, and, if no exceptions thereto are filed within thirty days after service of such notice, he shall enter judgment herein for the defendant.