Elizabeth L. BILANOW, Administratrix of the Estate of Herman David Levinson, Deceased.

v.

The UNITED STATES.

No. 313-54.

United States Court of Claims.

Nov. 7, 1962.

Rehearing Denied Feb. 6, 1963.

268

Samuel B. Groner, Silver Springs, Md., for plaintiff.

David V. Anthony, Washington, D. C., with whom was Joseph D. Guilfoyle, Acting Asst. Atty. Gen., for defendant.

DURFEE, Judge.

This proceeding was brought by a former employee of the Securities and Exchange Commission, asserting that he was wrongfully separated from the Federal service by a Reduction in Force order. Plaintiff's position was that of Attorney-Advisor, Grade GS–12, in the Division of Corporation Finance. He was claiming as damages, the salary he would have received from August 31, 1953, the date of his separation from the SEC, until August 2, 1954, the date of plaintiff's first gainful employment following his separation.

Plaintiff has died since the commencement of this suit. A substitution of plaintiff's administratrix will be allowed under Rule 25(a). Plaintiff's suit is based on wrongful interference with his contract of employment. The right to employment and to earn a living free from undue molestation is a property right affecting the estate of plaintiff. Such right does not abate upon his death.[1]

In late April and early May 1953, Congress was preparing the appropriation for the Securities and Exchange Commission for the coming fiscal year. There were indications that the appropriation would be less than the preceding year. In the judgment of the SEC, this lesser amount would make it necessary to drop some employees from their jobs. Acting upon these indications and the authorization of the Commission Chairman, on May 20, 1953, the SEC Director of Personnel, Mr. Becker, began preparing the Reduction in Force order. Notices were drawn up, the retention credits of employees were computed, and those employees who would be separated in the event the lower appropriation materialized were designated. This work done in late May and early June, was completed on June 20, 1953. June 30th, 1953, was the date used to measure the retention credits of the employees.

1. Patrick v. ESSO Standard Oil Company, 156 F.Supp. 336 (D.C.N.J.1957); National Labor Relations Board v. Hearst, 102 F.2d 658 (9th Cir. 1939); Almour v. Pace, 90 U.S.App.D.C. 63, 193 F.2d 699 (1951); Hines v. District of Columbia, 11 D.C. 141 (MacArthur and Mackey, 1884) 8 Rep. 747.

Under the Civil Service Regulations in effect at this time, employees were given one retention credit for each full year of Federal Government service. Half-years of service were added in the event of a tie. On the occasion of a Reduction in Force order, the employee with the lowest number of retention credits in the same competitive level would be separated first.[2]

As of June 30, 1953, plaintiff and the two other men in plaintiff's competitive level, Hall and Olson, each had 10½ retention credits. Plaintiff was administratively chosen to be separated because of the tie.

This date of June 30th, the end of the fiscal year, was chosen by the Director of Personnel approximately six weeks ahead of time, and he estimated "that by June 30 * * * we should know one way or the other whether a reduction in fact was necessary." (Finding 11.) The Director thought that by June 30, the appropriation bill would be passed by the Congress and signed by the President into law.

In fact, the bill was not passed and signed into law until July 31, 1953—one month later. And as had been feared, the final appropriation did provide the SEC with less funds than the preceding year. It thereby became necessary to issue the Reduction in Force order. Up to this time the notices to the employees affected were held in abeyance by the Director of Personnel and left undated. Plaintiff received his notice of separation shortly thereafter, dated July 31, 1953, to be effective August 31, 1953.

On July 11, 1953, plaintiff completed 11 years of Federal Government service. If July 31 or August 31 were used as measuring dates to compute retention credits, then plaintiff would not have been separated from the SEC. On the date actually used, June 30, plaintiff, Hall and Olson, who comprised plaintiff's competitive level, each had 10½ credits— a tie. On July 31 and August 31, 1953, plaintiff and Olson would have had 11 retention credits each (Olson also having had an employment anniversary in the meantime) and Hall would still have had only 10½ credits. (Findings 20 and 21). Under the regulations, Hall would have had to be separated rather than plaintiff.

It is plaintiff's contention that the SEC violated the law and regulations governing the Reduction in Force procedures, when it used June 30th as the cutoff date for earning retention credits. Plaintiff argues that either July 31 (notice of separation given) or August 31 (actual separation) should have been used. Defendant contends that no particular day is specified by the regulations; that the SEC acted properly by choosing a reasonable date under all the circumstances; that if plaintiff's view is adopted, the administrative difficulties created by leaving the cut-off date open until the final decision is made on the Reduction in Force order, or changing the computation date after the final decision is made, are so great as to be evidence itself that plaintiff's interpretation of the regulations is incorrect.

Whether or not any day should be chosen in preference to another, or whether in fact any day is designated by the regulations, are questions we need not reach in this opinion. The Civil Service Regulations and the Federal Personnel Manual provisions obviate the necessity for such a ruling.

Regulation 20.4(d) 5 CFR (1953 Supp.), which provides for the compilation of the retention register, states in part that "One retention credit shall be given for each full year of Federal Government service * * *." Paragraph (e) of this regulation, which deals with the sequence of selection of employees to be separated out, after the retention register has been drawn up, states that in the event of a tie, "Half years of service will be used * * *" to settle the issue. What is clearly contemplated is that retention credits will be determined rela-

2. Civil Service Regulations 20.3, 20.4(d), 20.4(e), 5 C.F.R. (1953 Supp.).

tive to some date, as here June 30th was chosen. After the measuring date is set and the retention register drawn up, the credits given, then, in the event of a tie, the agency is instructed to go back and look at the records again, and on this second look, determine if any man has accumulated an additional six months of service. The governmental agency is to look again at the length of service of the parties who have tied, and looking at their records alone, determine who should be separated and who should be retained, on the basis of half years of service.

Now the question is, must the agency look only at the period of time prior to the computing date, or may it look beyond such date, provided it has in fact passed, on this second look at the records to determine half years of service. There is nothing in the regulations which demands the former interpretation. Indeed the only reasonable interpretation is that the agency should look both before and beyond such date to come to a decision. The regulations speak of "maintaining current records," [3] and when a Reduction in Force order is pending, "the retention records of such employees shall be brought up to date on a current basis * * *." [4] The import of these regulations is to keep the records moving along, keep them current. To apply the rigid rule that the measuring date cuts off all considerations is not in keeping with the spirit of these regulations. To argue that this creates far too great a burden on the agency is to ignore the fact that the regulations contemplate a second look back at the records of the employees who are tied in retention credits in the first instance. There is no need to set a new computation date. There is the simple act of determining from the records of those employees alone who have tied, who has served a half year longer.

Such matters are very important to the employees affected. A man is going to lose his job, his means of support. At such times it is not unreasonable that he ask his superiors to exercise care and use every available and reasonable means open to secure a just and honorable decision. We are not prepared to say that to require looking beyond the computing date to determine if another six months service should be given an employee is either unavailable or unreasonable.

The SEC had given plaintiff, Olson and Hall each 10½ credits as of June 30, 1953. They were each given ten credits and on recomputation, the six months were added, again resulting in a tie of 10½ credits for each man. The SEC did not know, however, when the final determination would be made, if at all, to issue the Reduction in Force order. The decision came on July 31, 1953, one month after the computation date of June 30th had passed. We hold that on such date it was not unreasonable, and that it was within the spirit of the regulations to have the SEC look again at the ties alone to determine if any man had accumulated another six months of service. If this was done it would have resulted in according plaintiff and Olson 11 credits, and Hall would have been separated with 10½ credits.

It would not have been necessary to set a new measuring date. It would not have been necessary to look back at all other employees' records not tied in the same competitive level. If plaintiff had only eight credits, Olson eight and a half, and Hall nine, after the first complete computation, there would have been no reason to recompute to determine if plaintiff had come up to Olson in the number of credits in the meantime. Olson's actual length of service would have increased by the passage of time also. There would be no reason in fairness to the employees to recompute in such a case.

In plaintiff's case there was still a tie after the first computation and second look back for additional six months service. In this case the SEC had the obligation to compute a third time by simply looking at the records of these three men

---

3. Civil Service Regulations 20.3(a) 5 C.F.R. (1953 Supp.)

4. Civil Service Regulations 20.4(d) (1) 5 C.F.R. (1953 Supp.)

when the day of final decision came one month later.

Finally, we find it difficult to understand how the SEC reached the conclusion it did in the face of the clear mandate of the Federal Personnel Manual, R3–12 (Jan. 12, 1951):

> "The order of standing on a retention register on the date of the issuance of an employee's notice of action by reduction in force is controlling as to the rights of the employee throughout the period specified in the notice, except that the retention register and actions taken on the basis thereof shall be adjusted to reflect:
>
> "(1) The correction of any error of fact (such as the service credited, * * *) in the register at the time the notice was issued * * *."

"At the time the notice was issued" plaintiff had accumulated 11 years of Government service. The S.E.C. had the duty under the rules of the Civil Service Commission to correct plaintiff's "service credited" at such time, and thereby retain him in its employ. Its refusal was arbitrary, capricious and without any foundation in law. Consequently, plaintiff is entitled to recover and judgment will be entered to that effect.

The amount of plaintiff's recovery will be determined pursuant to Rule 38(c).

DAVIS, LARAMORE and WHITAKER, Judges, concur.

JONES, Chief Judge (concurring in the result).

The real question in this case is whether the Securities and Exchange Commission, in using the end of the fiscal year as the date at which to calculate retention credits in connection with a necessary reduction in force, acted so unreasonably as to justify this court in finding that its action was arbitrary or capricious. Only if this question can be answered affirmatively would this court be justified in substituting its judgment for that of the agency. It seems doubtful whether the facts justify such judicial substitution of judgment in this case.

On May 12, 1953, the Senate Committee on Appropriations recommended a substantial cut in the Independent Offices Appropriation Bill for the following fiscal year, and on May 20, 1953, the Senate passed the bill with the recommended reduction in funds. Because of this, it appeared to the Commission Chairman, and to the Director of Personnel, that a reduction in force would have to be made. The Director of Personnel was authorized to make the necessary preparations. The proposed reduction involved the separation of 50 of the 800 employees of the agency, 11 of whom were in the division in which plaintiff was employed. The necessary plans were begun approximately 6 weeks before the end of the fiscal year.

It was only natural to expect that the appropriation bill would be passed before the beginning of the new fiscal year, thus it was equally natural for the Commission to plan to rate its employees for retention as of that date, July 1, 1953. When the ratings were computed, it was found that there was a three-way tie between Hall, Olson, and Levinson, each of them having 10½ years' retention credit as of June 30, 1953. Civil Service Regulations provide that in the event of such a tie:

> "Half years of service will be used in breaking ties in retention standing, but any ties still remaining will be decided administratively. [CSC Regulations § 20.4(e).]"

When, on July 31, 1953, the reduced appropriation bill finally passed both Houses of Congress and was approved by the President, notices were sent to the plaintiff that he would be separated, pursuant to the reduction-in-force regulations, effective August 31, 1953.

If the ratings had been calculated as of July 31 or as of August 31, 1953, plaintiff would have passed an anniversary date, acquiring an extra half-year credit, and Hall would have been separated in his place. He called this fact to the attention

of the Personnel Director who ruled that the calculations had been made on a fiscal-year-end basis and that it was not practical to recalculate for each succeeding day, except for a tie, and then only for an added half-year or more. It is of note that this decision was affirmed upon appeal to the Civil Service Commission.

In passing on questions of this kind, we should not lose sight of the numerous and complicated problems arising in connection with the administration of a large nation-wide agency. Some of these agencies have many thousands of employees.

The Board of Appeals and Review of the Civil Service Commission, in its denial of plaintiff's appeal, called attention precisely to this practical side of the matter when it discussed the fact that the one-year credit, and half-year credit for tie breaking were developed for the purpose of solving such difficulties.

At the heart of the majority opinion lies the contention that the Commission was under the "clear mandate" of the Federal Personnel Manual, R3–12 (Jan. 12, 1951) to correct "any error of fact * * * in the register at the time the notice was issued." The argument is made that the failure to correct plaintiff's retention rating as of the date of his notice is such an error of fact. I do not agree with this interpretation, although I freely admit the issue is not free from doubt. That is not the nature of the error to which reference is made. The kind of error which was provided for by this portion of the Federal Personnel Manual was a manifest mistake as to the amount

of service which plaintiff had performed. As to this, the parties were in agreement. The disagreement here was not as to fact, but as to the manner in which the law is to be applied to the fact in order to determine the amount of retention points to be allowed. We should not apply it in such a manner as to deprive an agency of its "wide measure of discretion in the formulation of rules." Hilton v. Forrestal, 83 U.S.App.D.C. 44, 165 F.2d 251 (1947).

We need not hold that another method, or even other methods might not have proven satisfactory and reasonable. That is not in issue here. The question is as to the method or system actually used, that is whether this court is justified in finding that the method used in computing retention credits was arbitrary, capricious or unreasonable.

It has been disclosed, however, that the department has adopted a new system that enables it by keeping a record as to the date of employment, to have a continuous record of the relative length of individual service, thus avoiding recalculation from day to day. If this system had been in effect plaintiff would not have been dismissed. There is no explanation as to why this simple method was not used theretofore.

While I do not agree with the reasoning of the majority, yet in view of the change in the system and the fact that it is now in effect, and considering the fact that the meaning of the regulations in effect at the time is not free from doubt, I am concurring in the result.